Jennifer Marie Jones
P. O. Box 1320
Quartzsite, AZ 85346
Telephone: (928) 785-6318
E-mail: thedesertfreedompress@yahoo.com
*In Pro Per*

FILED ____ LODGED
____ RECEIVED ____ COPY

AUG 27 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Marie Jones; )<br><br>)<br>)<br>    Plaintiff, )<br>v. )<br>    )<br>Town of Parker; )<br>James Putz-Artrip, )<br>Town of Quartzsite; David Ward; )<br>Laura Bruno, Wife and Husband; )<br>Stephen Henrichs, Husband and )<br>Wife; Mark Orgeron, Husband )<br>and Wife;  Norma Crooks, Wife )<br>and Husband; Carol Kelly; )<br>Mike Jewitt, Husband and Wife; )<br>Shanana "Rain" Golden-Bear )<br>Individual Does I-X, )<br>    )<br>Defendants. ) | **COMPLAINT**  CV-14-01907-PHX-SPL<br><br>§1983 ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff, Jennifer Marie Jones, for her Complaint against all
Defendants allege as follows:

### Jurisdiction

1.        This action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2002 to declare the rights of the parties and to grant all further relief found necessary and proper. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (a).

2.        This Court has personal jurisdiction over the defendants, who are located in the District of Arizona.

3.        Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(a) in that the defendants are subject to personal jurisdiction within the District of Arizona and the events that give rise to this action occurred within the District of Arizona.

4.        Plaintiff, Jennifer Marie Jones, is a married adult residing within the County of La Paz, Town of Quartzsite, State of Arizona.

5. Defendant Town of Parker (referred to hereafter as "Parker") is a municipality organized under the laws of the state of Arizona and appointed, manages, directs and controls Defendant James Putz-Artrip.

6. Defendant James Putz-Artrip (referred to hereafter as "Putz-Artrip") was at all relevant times the Magistrate Judge of Parker, Arizona, and employed by the Town of Parker. Putz-Artup issued an administrative search warrant for the Plaintiff's travel trailer without probable cause and without performing due diligence.

7.    Defendant Town of Quartzsite (referred to hereafter as "Quartzsite") is a municipality organized under the laws of the state of Arizona and manages, directs and controls the following Defendants.

8.        Defendant David Ward (referred to hereafter as "Ward") was at all relevant times the Town Prosecutor of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendant Ward, made statements he reasonably knew were false in a sworn affidavit, in order to secure an administrative search warrant for a travel trailer owned and registered to the Plaintiff. Defendant Ward, without benefit of a written complaint or police investigation filed 113 class 1 misdemeanor counts against Plaintiff, punishable "by a fine of not to exceed two thousand five hundred dollars or by imprisonment for a period not to exceed six months, or by both such fine and imprisonment" for each count, with a total combined possible maximum penalty of over five and a half years in prison and $282,500, when the actual penalty for the alleged municipal violation was only to purchase a license and pay a fine of not more than fifty dollars.  These unlawful, false charges are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town.   David Ward is named herein in his individual capacity.

9. Defendant Laura Bruno (referred to as "Bruno") was at all relevant times the Town Manager of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendants Laura Bruno and Joe Bruno, are and were, at all times relevant, wife and husband residing in La Paz County, Arizona. All actions taken by Defendant Laura Bruno were on behalf of the marital community. At all times relevant, Defendant Laura Bruno held the position of Town Manager in and for the Town of Quartzsite. Laura Bruno made statements she reasonably knew were false in a sworn affidavit, in order to secure an administrative search warrant for a travel trailer owned and registered to the Plaintiff. Bruno participated in, supervised, or directed, events surrounding the filing of 113 class 1 misdemeanor counts against Plaintiff, punishable "by a fine of not to exceed two thousand five hundred dollars or by imprisonment for a period not to exceed six months, or by both such fine and imprisonment" for each count, with a total combined possible maximum penalty of over five and a half years in prison and $282,500, when the actual penalty for the alleged municipal violation was only to purchase a license and pay a fine of not more than fifty dollars, a license the Plaintiff had applied for and Bruno had a statutory obligation to process but she refused. Bruno then illegally "investigated" the Plaintiff. Bruno participated in, supervised, or directed, the writing, publishing and distribution of an official Town press release which libeled and defamed the Plaintiff and her husband, and which remained publicly viewable on the Quartzsite website for weeks. These actions are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal

protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town. Laura Bruno is named herein in her individual capacity.

10.    Defendant Stephen Henrichs (referred to hereafter as "Henrichs") was at all relevant times the so-called "Community Development Director" of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendants Stephen Henrichs and Diana Henrichs, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona. All actions taken by Defendant Henrichs were on behalf of the marital community. At all times relevant, Defendant Henrichs held the position of "Community Development Director" in and for the Town of Quartzsite. Defendant Henrichs made statements he reasonably knew were false in a sworn affidavit, in order to secure an administrative search warrant for a travel trailer owned and registered to the Plaintiff.. Henrichs participated in events surrounding the filing of 113 class 1 misdemeanor counts against Plaintiff, punishable "by a fine of not to exceed two thousand five hundred dollars or by imprisonment for a period not to exceed six months, or by both such fine and imprisonment" for each count, with a total combined possible maximum penalty of over five and a half years in prison and $282,500, when the actual penalty for the alleged municipal violation was only to purchase a license and pay a fine

of not more than fifty dollars, a license Henrichs had arbitrarily denied the Plaintiff without legal basis. These unlawful, false charges are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town. Stephen Henrichs is named herein in his individual capacity.

11. Defendant Mark Orgeron (referred to hereafter as "Orgeron") was at all relevant times a member of the Town Council of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendants Mark Orgeron and Cheryl Orgeron, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona. At all times relevant, Defendant Orgeron held the position of Quartzsite Town Council Member. All actions taken by Defendant Orgeron were on behalf of the marital community. Defendant Orgeron was aware of the actions taken against the Plaintiff by Defendants' Bruno, Henrichs, Ward and Putz-Artrip. His actions or lack thereof are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political

expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town. Mark Orgeron is named herein in his individual capacity.

12.        Defendant Norma Crooks (referred to as "Crooks") was at all relevant times a member of the Town Council of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendants Norma Crooks and James Crooks, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona. At all times relevant, Defendant Crooks held the position of Councilwoman in and for the Town of Quartzsite. All actions taken by Defendant Crooks were on behalf of the marital community.   Defendant Crooks was aware of the actions taken against the Plaintiff by Defendants' Bruno, Henrichs, Ward and Putz-Artrip. Her actions or lack thereof are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town.   Norma Crooks is named herein in her individual capacity.

13.        Defendant Carol Kelley (referred to hereafter as "Kelley") was at all relevant times a member of the Town Council of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendant Kelley was aware of the actions taken against the

Plaintiff by Defendants' Bruno, Henrichs, Ward and Putz-Artrip. Her actions or lack thereof are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town. Carol Kelley is named herein in her individual capacity.

14.     Defendant Mike Jewitt (referred to hereafter as "Jewitt") was at all relevant times a member of the Town Council of Quartzsite, Arizona, and employed by the Town of Quartzsite. Defendants Mike Jewitt and Marie Ryder-Jewitt, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona. All actions taken by Defendant Jewitt were on behalf of the marital community. Defendant Jewitt was aware of the actions taken against the Plaintiff by Defendants' Bruno, Henrichs, Ward and Putz-Artrip. His actions or lack thereof are part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, denial of equal protection under the laws, abuse of power, political retaliation, interference with contract, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town, because of her activities as a journalist and publisher which are critical of the Town. Mike Jewitt is named herein in his individual capacity.

15.     Shanana "Rain" Golden Bear (referred to as "Golden Bear") was at all relevant times the Publisher of the Desert Messenger, a community tabloid doing business in Quartzsite, Arizona. Golden Bear published Quartzsite's libelous and defamatory press release about the Plaintiff in her tabloid and on the internet where it remains in perpetuity.

17.     The fictitiously named Defendants Individual Does I-X in the caption to the Complaint are individuals who may have in some manner contributed to Plaintiffs' injuries and damages and are therefore liable.   The true names for said Defendants are unknown to Plaintiffs at this time.   Once the identities of these Defendants are discovered, leave of Court will be sought to amend this Complaint accordingly.  The Doe defendants are named herein in their individual capacities.

## Complaint

### I.                        Factual Allegations

15.     Plaintiff is among the "self-styled activists" named by former Town Attorney Martin Brannan in a Town Press Release.  Plaintiff has been targeted for abuse by the Town of Quartzsite since 2008 because she complained about a warrant-less search of her home without probable cause and continued to speak out against the corrupt Quartzsite government, because she publishes a widely read free newspaper that is editorially opposed to several past and present members of the Quartzsite government and public actions they have taken, and also because she dared to run for public office

against members of the Quartzsite Town Council. As a result, Plaintiff Jennifer Jones and her husband were repeatedly arrested on trumped up, bogus charges, and subjected to the filing of bogus criminal charges (which were subsequently dismissed), the filing of numerous bogus zoning charges without the statutorily required due process, the threat of potential fines and actual bail.

16. As part of that long standing pattern of intentional targeting and conspiracy to subject Plaintiff to inequitable treatment, harassment, intimidation, false charges, emotion distress and loss of income, another round of politically motivated persecution began in early May of 2013, when Henrichs went to the home of Plaintiffs' elderly landlords on two occasions, threatening them and demanding that they remove the Plaintff and her travel trailer from their property, citing statutes that did not remotely apply to the facts of the situation.

17. Plaintiff was licensed by the Town to conduct business at the location at issue and had entered into an agreement with the property owners which required her be open for business a specific number of days each week.

18. After being warned against their course of action in writing by Quartzsite Mayor Edward Foster on May 9, 2013, , Bruno notified all council members of the legal dispute in a written memo dated May 13, 2013.

19. Bruno and Henrichs, along with Quartzsite employees under their control then refused to process Plaintiff's timely application to renew her vending permit without any statutory basis or authority to do so, pursuant to Quartzsite Town Code, Chaper 8, Business Regulations. Henrichs admitted in a video recorded conversation that he was treating the Plaintiff differently than every other vendor who had come to Quartzsite in the year previous.

20.     Quartzsite Defendants Bruno, Henrichs and Ward made statements they knew or reasonably should have known were false and did not amount to probable cause, in order to secure an administrative search warrant from Putz-Artrip and conduct a fishing expedition, which potentially endangered the safety of all parties involved in the execution of said warrant, and which yielded no evidence of criminal activity. Quartzsite applied for no other search warrants, criminal or administrative during all of 2013.

21.     Putz-Artrip issued the administrative search warrant for the Plaintiff's travel trailer for no legitimate government purpose. The Warrant was executed by then Quartzsite Police Chief Jeff Gilbert, officers Garcia, Tanakeyowma, Newton, and Henrichs in a very heated confrontation. No arrest was made related to the search, and no charges were brought against the Plaintiff or her husband related to the search. Photographs and video were recorded of the search.

22.     Both Quartzsite and Parker initially refused to provide Plaintiff with the sworn affidavits of Bruno, Henrichs and Ward in violation of her right to confront her accusers. Plaintiff finally received the affidavits on August 28, 2013.

23.     Quartzsite then published and distributed a press release about the incident which labeled and defamed the Plaintiff. Golden Bear published and distributed the information contained in the press release, which caused additional distress to the Plaintiff. An unknown person then set up a website containing further false and libelous statements about the Plaintiff. Golden Bear published additional false statements about Plaintiff in 2014, and then refused to take them down after Plaintiff contacted her and made it known the statements were blatantly false. These statements were all related to the Plaintiff's ability to properly care for animals, the source of her income, and they remain publicly viewable on the internet.

24.    Plaintiff notified the Quartzsite Council about the press release and the perjury by Bruno Henrichs and Ward. Plaintiff also filed a criminal report with the La Paz County Sheriffs Office.s

25.    After tolling out 113 days from the date the Plaintiff tried to purchase her vendor license renewal, Ward then brought 113 false counts against Plaintiff for not having a license, the end result of which was to prevent Plaintiff from earning a living and subsidizing the funding deficit in printing her newspaper. Plaintiff had run her pet grooming and pet sitting business out of a variety of recreational vehicles and at a variety of locations in Quartzsite since January of 2001. Plaintiff had done so without any negative contact with Quartzite, with no arrests, charges, fines, sanctions, or attempts to stop her from plying her trade until 2008, the year she became politically active in Quartzsite.

26.    This was the second occurrence of the Plaintiff being denied a license by Quartzsite, and then falsely charged for not having it by Ward. In the first instance, the charges were dismissed "in the interest of justice".

27.    In another instance, Quartzsite had charged the Plaintiff for not having a license while she was working for someone else. In that case, the Plaintiff was acquitted at trial.

25.    The fact that Quartzsite council members were aware of and direct Quartzsite management, they approved of the actions taken against Plaintiff, and encouraged them, which demonstrates that the Quartzsite Council (Foster and Scott excluded), not only failed to supervise, but are complicit and conspired in the bringing of false charges against plaintiff, with malice and intent to harass, frustrate, and prevent her from plying her trade, all in retaliation for her political activism and free speech.

26.     This harassment and bringing of false charges related to the Plaintiff conducting her dog grooming business, are part of a broader campaign of retaliation and intimidation to suppress and silence Plaintiff and to violate her civil rights.    These actions against her, and other "activists," by the Town have been carried out with evil intent and with the intent to inflict emotional distress and to suppress free speech and political participation by political opponents.

27.     The harassment of political opponents in Quartzsite has not been confined to Plaintiff, as is well documented as far back as the May 10, 2011 letter issued to the Town Council and Town Manager by ten out of thirteen of the officers serving in the Quartzsite Police Department, under the letterhead of the Quartzsite Police Officers Association (available online at http://www.scribd.com/doc/59823583/Quarlzsite-Police-Officers-Association-Letter-regarding-Police-Chief).

28.     That letter from the ten Quartzsite officers stated that Chief Gilbert intentionally and improperly targets citizens for political persecution and retaliation in the form of trumped up and fabricated citations and arrests.  In that official letter, those ten courageous and principled whistle-blowing officers expressed a formal vote of no-confidence in the Chief, and stated that he should be removed from office.

29.     That letter from the ten Quartzsite police officers was delivered to each member of the Town Council and also to the Town Manager.

30.    The letter from the ten Quartzsite police officers was also delivered to the Arizona Peace Officer Standards and Training Board (AZPOST) on May 11, 2011, requesting an investigation into wrongdoing by Chief Gilbert.

31.    The officers also filed a complaint and with the Arizona Department of Public Safety, Major Crimes Division.

32.    Among the allegations brought by the officers against Chief Gilbert in that May 10, 2011 letter were that: "**He runs license plates just to find out names of people whose vehicles are parked at businesses/residences of people he doesn't like. Not for an investigation, but to gain personal Information about people for his political benefit. <u>He runs criminal history reports through NCIC to try to find "dirt" on candidates or citizens supporting the candidates he does not like</u>** .... **He orders officers to pull over and arrest/cite violations of citizens he feels are against him or he doesn't like. Not because they have committed a violation that he wants enforced equally, but because it is someone he doesn't like. Clearly this is a misuse of his power." (emphasis added).**

**33.        Even after being given that letter from the ten whistle-blowing officers, t**he Town Council took no action to curtail the documented abuses of citizens.

34.        In addition, the officers presented their grievances yet again to the Town Council during a public meeting on June 14, 2011 (the meeting just prior to the June 28, 2011 meeting where Plaintiff Mrs. Jones was unlawfully removed from the podium and arrested while exercising her constitutionally protected right to free speech.

See Complaint in Case No. 2:12-cv-01383-JAT).   At that June 14, 2011 meeting, John Stair, at the time Vice President of the Arizona Conference of Police and Sheriffs (AZCOPS), spoke on behalf of the ten Quartzsite officers, and testified about the seriousness of the allegations against Chief Gilbert, quoting from the officers' May 10, 2011 letter (beginning at the 36:40 mark of the video available online at: http://www.youtube.com/watch?v=R_pa3RPsrX8&feature=youtu.be)

35.     At the 42.38 minute mark of that video, Mr. Stair notes that the Town of Quartzsite, in the wake of the allegations against Chief Gilbert, is not following its own policy of placing an officer on administrative leave when serious allegations of criminal wrongdoing are brought against the officer.  Mr. Stair urged the Town to place Chief Gilbert on administrative leave during the pending investigation into the alleged wrongdoing.

36.     Despite the serious allegations brought by the ten Quartzsite officers against their own Chief, and despite ongoing investigations into the alleged wrongdoing by Chief Gilbert by the State of Arizona and by the F.B.I, with the La Paz County Attorney writing the F.B.I. to request an investigation into civil rights violations by Chief Gilbert, the Town of Quartzsite has not placed Chief Gilbert, or any of the other officers accused of violating the rights of citizens and accused of criminal wrongdoing, on administrative leave, and has refused to discipline them or otherwise prevent the ongoing, and continuing pattern of false arrest, intimidation, malicious prosecution, harassment,

retaliation, intentional infliction of emotional distress, abuse of power, and conspiracy to violate the civil rights of Plaintiffs and other citizens.

37. In fact, while Mr. Stair was still speaking at the June 14, 2011 meeting, rather than giving proper consideration to those serious allegations, the Town Council, except for the Mayor, began leaving their seats and walking out of the meeting, making it very clear that the entire Town Council had no interest in hearing the officers' serious allegations of abuse of civil rights and corruption against their own Chief of Police, and clearly expressing the Town Council's intent to yet again do nothing to reign in the Chief and his complicit officers.

38. Thus, despite being warned repeatedly that the Chief and his remaining complicit officers were violating the rights of the citizens of Quartzsite, the Town Council not only did nothing to prevent any further abuse, they in fact ordered that abuse to continue by voting to deny Plaintiff Jennifer Jones her right to free speech and ordering her removal from the subsequent meeting on June 28, 2011, and then continued to refuse to place Chief Gilbert on administrative leave, despite ongoing state and federal investigations into his abuse of power and violation of rights, which refusal directly facilitated, aided, and encouraged the ongoing conspiracy and campaign of harassment, violation of rights, malicious prosecution, intimidation, intentional infliction of emotional distress, retaliation, and conspiracy to violate the civil rights of Plaintiffs that continues to this day.

39.     The Town of Quartzsite retained command, control, and authority over, and was responsible for, the actions of the Defendants at all relevant times.

40.     The Quartzsite Council knowingly failed to exercise proper oversight and discipline of the Defendants under their control, and is in fact directly and intentionally complicit in the violations of Plaintiffs' rights, in a long pattern of false arrest and false charges.

41.     The harassment of Plaintiffs had previously intensified after Jennifer Jones announced her first candidacy for Town Council. In one election, former Quartzsite Clerk Terry Frausto even altered the Plaintiff's filed election documents and admitted to doing so. The end result was that Jewitt ran unopposed on the official election ballot..

42.     La Paz County Attorney Samuel Vederman, in his January 3, 2012 letter to F.B.I. agent Frank Farley of the Public Corruption Unit, requested that the F.B.I. conduct an investigation into criminal wrongdoing by Chief Gilbert and the Quartzsite Police Department, stating: "I believe the circumstances warrant an investigation for the following reasons .... Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred, or, at the very least, did not rise to the level of felony conduct: Russell Sias (Aggravated Assault on a Peace Office), Jennifer Jones (Influencing a Witness), Michael Roth  (Resisting Arrest) and Ed Foster (Obstructing a Criminal Investigation) .... The Town, through Councilwoman Patricia Anderson, publicly criticized this office for declining to prosecute Michael Roth for an incident that took place at a Town Council meeting in June 2011, it is the same incident

in Which Chief Gilbert requested this office charge Mr. Roth with felony Resisting Arrest." Mr. Vederman's letter is available online at http://aview.info/A-View/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-01-03-FBI-letter.pdf

43.     As an additional indication of the bias and disparate treatment of Plaintiffs, in November, 2010 Defendants had charged both Plaintiff and her husband with false reporting, stemming from their complaint of the video-taped trespassing and assault by building official Al Johnson, with those charges later dismissed. However, in sharp contrast, and illustrating the unequal treatment, no one who has levied false charges against Plaintiffs has ever been charged with false reporting, no matter how obvious the fabrication, with those false charges later thrown out.

44.     As noted above, even Mr. Vederman, the La Paz County Superior Court Judge, sees a pattern and practice of targeted, malicious prosecution, false charges, false arrest, and unequal treatment against Plaintiffs and other "activist" residents of Quartzsite, Arizona, and multiple state and federal agencies are now investigating.

45.     Plaintiff's first false arrest occurred on November 19, 2010, within several days after a town council meeting where Mrs. Jones publicly announced that she would be running for a Town Council position, and announced that she was starting an independent newspaper, The Desert Freedom Press, which is both a hard copy and online newspaper, with paid advertisers, published bi-monthly, with a peak circulation of 20,000 copies at the height of the tourist season.

46. That first arrest has been followed by a spectacular number of false charges and false arrests against the Plaintiff, including, but not limited, to the charges brought in the matter at issue.

47. The Arizona Department of Public Safety (DPS) conducted an investigation which resulted in multiple audio recorded interviews of Quartzsite Police Department (QPD) officers in August of 2011, with that report being released to the general public in September, 2012. Most of the officers interviewed were later terminated by the Town, but all were employed by the Town at the time of their respective DPS interviews. Several of those interviews directly discuss intentional violations of rights, including false arrest and trumped up charges, against Plaintiff, and several also note that members of the Quartzsite Council were not only aware of those abuses, but directed them.

48. Even after the Quartzsite officials received that report in August, 2012, no steps were taken to stop the ongoing harassment and abuse of Plaintiff or other outspoken political activists. To the contrary, members of the Town council directed Chief Gilbert to conduct that abuse, as testified to by several of the above quoted officers during their interviews with DPS. The false charges and obstruction of Plaintiff's business in the instant case are part and parcel of that ongoing, well documented harassment campaign and conspiracy to violate Plaintiff's rights.

## II. Claims

### FIRST CAUSE OF ACTION

## FIRST AMENDMENT RIGHT TO FREE SPEECH, PRESS
## AND ASSEMBLY (All Defendants except Putz-Artrip and Parker)

49.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

50.   Defendants violated the First Amendment free speech, free assembly, and free press rights of Plaintiffs by all of the above noted actions, including the intentional filing of bogus code violation charges and false fines against Plaintiff because of their hostility toward Plaintiffs' constitutionally protected political speech which was critical of Quartzsite policies and actions.

51.    As is well documented by the above noted letter of the ten Quartzsite officers, by the letter to the F.B.I. from the La Paz County Attorney, and by the multiple interviews with then-serving Quartzsite Police Department Officers, Plaintiff has been directly targeted by the Defendants, in an ongoing pattern of false arrest, false charges, and harassment, because of Plaintiff's political free speech and press activities – her opposition to the Quartzsite and to the Policies of it's officials. These acts were done with malicious intent, thus punitive damages are appropriate.

52.    Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiff's rights, privileges and immunities, as secured by the First, Fourth and Fourteenth Amendments to the United States Constitution.  Said rights, privileges and immunities include the right to free speech and press, as well as the right to peacefully assemble, the right to

participate in the political process, and the right to criticize public officials and the conduct and procedures of law enforcement officials.

## SECOND CAUSE OF ACTION
## FIRST AMENDMENT RIGHT TO BE FREE FROM RETALIATION (All Defendants except Putz-Artrip and Parker)

53.     Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

54.     The participation in the political process, commentary and criticizing of public officials and policy, and political demonstrations, is expression and action that is protected by the First Amendment to the United States Constitution.

55.     Defendants' filing of false charges and fines against Plaintiff, in retaliation for her engaging in constitutionally protected speech and political activity, constituted unlawful retaliation in violation of their First Amendment rights. These acts were done with malicious intent, thus punitive damages are appropriate.

## THIRD CAUSE OF ACTION
## FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND MALICIOUS PROSECUTION
## (All Defendants)

56.     Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

57.     Defendants' actions in authorizing and/or directing and requesting the subsequent filing of false charges against Plaintiff without probable cause violated

Plaintiff's Fourth Amendment right to be free from unreasonable search and malicious prosecution. These acts were done with malicious intent, thus punitive damages are appropriate.

FOURTH CAUSE
OF
ACTION
FAILURE TO TRAIN, ENACT AND IMPLEMENT POLICIES TO
PREVENT ABUSE, SUPERVISE AND DISCIPLINE (Defendants
Quartzsite and Parker)

58. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

59. The failure of Defendant Town of Quartzsite to properly train, enact policies to prevent abuse of civil rights, and failure to supervise and discipline Defendants to prevent abuse and violation of constitutionally protected rights, even in the face of overwhelming evidence of abuse and violation of rights, to the level of criminal activity, constitutes deliberate and willful indifference to the rights of those who come into contact with Defendants.

60. Plaintiff's injuries were the direct and proximate result of Defendants Quartzsite and Parker's failure to provide adequate training and supervision to Defendants, and failure to discipline Defendants, even after being notified.

61. The need for effective training and supervision of the individual Defendants, was and should have been plainly obvious to the Quartzsite and Parker policymakers.

62. Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of the rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution. Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to be free from unreasonable searches and seizures, and the right to equal protection of the laws. These acts were done with malicious intent, thus punitive damages are appropriate.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS (All
Defendants except Putz-Artrip and Parker)

63. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

64. As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, and false charges as tools of oppression and intimidation were done with overt, malicious intent to stifle, chill, and violate Plaintiff's rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution by causing her emotional distress. Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to be free from unreasonable searches and seizures, the right to bodily integrity, and the right to equal protection of the law. There is a very well

documented, overwhelmingly supported, clear pattern of intentional targeting of Plaintiff for harassment, intimidation, and intentional infliction of emotional distress in an attempt to chill her speech, silence her, ruin her political campaigns and ruin her business in an attempt to induce her and her husband to leave town, all of which were done with malicious intent. Thus, punitive damages are appropriate.

### SIXTH CAUSE OF ACTION: CONSPIRACTY TO VIOLATE THE CONSTITUTIONALLY PROTECTED RIGHTS OF PLAINTIFF
### (All Defendants)

65.     Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

66.    As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, interference with contract, and false charges, were done with overt, malicious intent as part of a conscious conspiracy among the Defendants to stifle, chill, and violate Plaintiff's rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution. Said rights privileges and/or immunities include the right of free speech and engaging in the political process, the right to a free press, the right to peaceably assemble, the right to be free from unreasonable searches and seizures, the right to bodily integrity, and the right of equal protection of the law. There is a very well documented, overwhelmingly supported, clear pattern of intentional, coordinated conspiracy, and actions to further that conspiracy, to target Plaintiff for harassment, intimidation, retaliation, and intentional

infliction of emotional distress in an attempt to chill her speech, silence her, ruin her political campaigns and ruin her business in an attempt to induce her to leave town, all of which were done with malicious intent. Thus, punitive damages are appropriate.

SEVENTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE
WITH CONTRACT (All Defendants except Putz-Artrip and Parker)

67.     Plaintiff incorporate by reference the allegations of the preceding paragraphs as though set forth at length herein.

68.     As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, and false charges, were done with overt, malicious intent as part of a conscious conspiracy among the Defendants to interfere with, and frustrate the contract entered into between Plaintiff and landlord, to prevent Plaintiff from being able to ply her trade and to ruin her business in an attempt to induce her to leave town.

EIGHTH CAUSE OF ACTION:

VIOLATING OF EQUAL PROTECTION BY SINGLING OUT PLAINITFF FOR UNEQUAL TREATMENT FOR NO REASON OTHER THAN MALICE, AS A CLASS OF ONE. (All Defendants except Putz-Artrip and Parker)

69.     Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

70.     The Defendants inflicted unequal treatment upon Plaintiff for no reason other than malice, treating her radically differently than others similarly situated. Defendants targeted Plaintiff for a false light invasion of her privacy without probable cause, bad faith and malicious prosecution, and defamation, for political reasons, to prevent Plaintiff from being able to ply her trade and earn a living, and as retaliation for constitutionally protected free speech, association, and participation in the political process, all of which are wholly unrelated to any legitimate state objective.

**Demand and Prayer for Relief** Wherefore, Plaintiff respectfully request that the Court:

1.     Exercise jurisdiction over this action;

2.     Award appropriate compensatory damages against all Defendants;

3.     Award appropriate punitive damages against each of the Defendants since these acts were done with malicious intent, thus punitive damages are appropriate; and

4.     Grant such other relief as may be appropriate, including the award of reasonable attorneys' fees, litigation expenses, and costs.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 27th day of August, 2014.

By:

Jennifer Marie Jones
P. O. Box 1320
Quartzsite, AZ 85346
Telephone: (928) 785-6318
E-mail: thedesertfreedompress@yahoo.com
*In Pro Per*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2014, I filed the foregoing document with the Clerk's Office.

By Jennifer Marie Jones